1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

10

**SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | EARL MCLAUGHLIN,

CASE NO. 14cv0504 WQH (NLS)

13
14

Plaintiff,

ORDER

vs.

15
16 | HILTON WORLDWIDE, INC., a
Delaware Corporation; EMBASSY
SUITES MANAGEMENT LLC, a
17 | Delaware Limited Liability Company;
FELCOR/JPM HOTELS, LLC, a
18 | Delaware Limited Liability Company;
and DOES 1 through 10,
19
20

Defendants.

21 | HAYES, Judge:

22        The matter before the Court is the Motion to Dismiss (ECF No. 26) filed by

23 | Defendants Hilton Worldwide, Inc. ("Hilton"), Embassy Suites Management, LLC

24 | ("ESM") and Felcor/JPM Hotels, Inc. ("Felcor").

25                              **BACKGROUND**

26        On March 6, 2014, Plaintiff initiated this action by filing a complaint against

27 | Defendants Hilton, Felcor and ESM.  (ECF No. 1).  On April 9, 2014, Plaintiff filed a

28 | first amended complaint against all Defendants.  (ECF No. 8).

On July 9, 2014, Plaintiff filed a motion for leave to file a second amended complaint. (ECF No. 19). On August 27, 2014, the Court issued an Order granting Plaintiff's motion for leave to file a second amended complaint. (ECF No. 23).

On August 28, 2014, Plaintiff filed a second amended complaint against Defendants Hilton, Felcor and ESM. (ECF No. 24). On September 15, 2014, Defendants filed the motion to dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 26). On October 6, 2014, Plaintiff filed a response. (ECF No. 27). On October 10, 2014, Defendants filed a reply. (ECF No. 30).

## ALLEGATIONS OF SECOND AMENDED COMPLAINT

Plaintiff suffers from "Friedreich's Ataxia, a genetic-progressive neuromuscular disorder that affects ... coordination, speech, eyesight and hearing...." (ECF No. 24 ¶ 1). "[Plaintiff] is unable to walk and uses a power wheelchair for mobility." *Id.* "[P]laintiff is a former Board Member of the National Ataxia Foundation. He is on the planning committee and an officer for the San Diego Support Group of that foundation." *Id.* ¶ 12. "[Plaintiff] frequently travels to Minnesota to attend board meetings and events at the Minnesota headquarters of the National Ataxia Foundation." *Id.* "[P]laintiff is a Hilton Honors Member. He stays at Hilton and Embassy Suites on a regular and ongoing basis. He frequently travels to Minnesota ... and will continue to do so in the future because of his work with the National Ataxia Foundation." *Id*. ¶ 17.

"Defendant [Felcor] was during all relevant times in this complaint, the owner of the Embassy Suites Bloomington hotel..." *Id*. ¶ 3. "Defendant [ESM] was during all relevant times in this complaint, the operator of the Embassy Suites Bloomington hotel..." *Id*. ¶ 4. "Defendant [Hilton] is the owner and operator of the website reservation system" and "handles reservations for Hilton branded and Embassy Suites hotels including the Embassy Suites Bloomington hotel." *Id*. ¶ 2.

"On July 9, 2013, ... [P]laintiff was preparing for his trip to attend a board

meeting of the National Ataxia Foundation.  He used the Embassy Suites/Hilton interactive website and booked an accessible King Suite ... for a July 21, 2013 check in" at Embassy Suites Bloomington hotel in Bloomington, Minnesota. *Id.* ¶ 13  "He reserved this room with [his] credit card.  The [D]efendants' confirmation email was sent on July 9, 2013, confirming the room reservation for his stay." *Id.*  "The print at the bottom of the confirmation email noted that the [P]laintiff's room would only be provided 'if available' and that the [P]laintiff's 'preference' for an accessible room was 'subject to hotel availability.'" *Id.*  "Thus, the defendants do not guarantee that the specific accessible room reserved through the reservation service is held for the reserving customer." *Id.* ¶ 14.

"On July 21, 2013, when the [P]laintiff went to the Embassy Suites Bloomington, he was told that his room was no longer available.  The hotel staff told the [P]laintiff that the room reservation is, in fact, not guaranteed.  The [P]laintiff was forced to go to a different hotel and pay a higher price." *Id.* ¶ 15.  "In encountering and dealing with the non-compliant hotel reservation policies and practices, the [P]laintiff experienced difficulty and frustration.  This violation denied the [P]laintiff full and equal access to facilities, privileges and accommodations offered by the [D]efendants." *Id.* ¶ 16. "[P]laintiff will continue to be discriminated against by these [D]efendants until they change their policies and practices." *Id.* ¶ 17.

Plaintiff's second amended complaint seeks injunctive relief for violation of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act. *Id.* ¶ 23 Plaintiff also seeks damages for violation of the Unruh Civil Rights Act and the California Disabled Persons Act. *Id.* ¶ 25.

## LEGAL STANDARD

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ's. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  "[W]hen considering a motion

to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). However, this standard "[is] not appropriate for determining jurisdiction in a case ... where issues of jurisdiction and substance are intertwined." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). "A court may not resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Id.* (citations and quotations omitted). "If the jurisdictional issue and the substantive issues of a cause of action are so intertwined that the question of jurisdiction is dependent on the resolution of the merits, the court must address the case in terms of its merits." *Pro Sales, Inc. v. Texaco, U.S.A.*, 792 F.2d 1394, 1397-98 (9th Cir. 1986).

Federal judicial power extends only to cases and controversies over which a court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Barker-Hatch v. Viejas Grp. Baron Long Capitan Grande Band of Digueno Mission Indians of Viejas Grp. Reservation,* 83 F.Supp.2d 1155, 1156 (S.D. Cal. 2000). Federal courts are presumptively without jurisdiction over civil actions and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for dismissal where there is a "lack of jurisdiction over the subject matter" of the suit. Fed. R. Civ. P. 12(b)(1). A federal court must consider its own subject matter jurisdiction prior to ruling on any other motion. *See U.S. v. Ceja–Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003).

## DISCUSSION

### I.    Jurisdictional Mootness

Defendants Felcor and ESM contend that Plaintiff's ADA claim is moot because they no longer own or operate the hotel. Defendant Hilton contends that the ADA claim is moot because Hilton already guarantees accessible room reservations and is under a

1    continuing court order to do so.

2          Plaintiff contends that his ADA claim against Defendants Felcor and ESM is not

3    moot because the sale of property does not establish mootness.  Plaintiff further

4    contends that his ADA claim against Defendant Hilton is not moot because Hilton has

5    not established that its system for reserving and providing accessible rooms complies

6    with the ADA or that future violations will not occur.

7          "Mootness is a jurisdictional issue ... address[ed] at the threshold." *United States*

8    *v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007).  A case is rendered moot when "the

9    issues presented are no longer 'live' or the parties lack a legally cognizable interest in

10   the outcome." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th

11   Cir. 1998) (citing *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  The "party

12   asserting mootness bears a 'heavy burden of establishing that there is no effective relief

13   remaining for a court to provide.'"  *Strong,* 489 F.3d at 1059 (citation omitted).  "[P]art

14   or all of a case may become moot if (1) 'subsequent events [have] made it absolutely

15   clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur,'

16   and (2) 'interim relief or events have completely and irrevocably eradicated the effects

17   of the alleged violation.'"  *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135

18   F.3d 1260, 1274 (9th Cir. 1998) (citation omittied).

19         In this case, Defendants Felcor and ESM submit the sworn affidavit of Maxime

20   Verstraete, Vice President, Sustainability and ADA Compliance, at Hilton Worldwide,

21   which states in part that "[e]ffective March 20, 2014, Felcor sold the [Embassy Suites

22   Bloomington hotel] to another entity and ESM ceased to be the Hotel's operator."

23   (ECF No. 26-3, Declaration of Maxime Verstraete at ¶ 2).  The Court finds Plaintiff's

24   ADA claim against Defendants Felcor and ESM is moot.  A "private plaintiff can sue

25   *only* for injunctive relief ... under the ADA...."  *Oliver v. Ralphs Grocery Co.*, 654 F.3d

26   903, 905 (9th Cir. 2011) (emphasis added).  Plaintiff concedes that "the sale of the

27   property means that [he] cannot obtain injunctive relief against defendants [ESM] or

28   Felcor...."  (ECF No. 27 at 7).  Under the facts presented, Defendants Felcor and ESM

have carried their "heavy burden of establishing that there is no effective relief remaining for a court to provide." *Strong,* 489 F.3d at 1059.  Defendants' motion to dismiss Plaintiff's ADA claim against Defendants Felcor and ESM is granted.

With respect to Defendant Hilton, the record shows that a consent decree between Hilton and the U.S. Department of Justice was entered by the United States District Court for the District of Columbia on November 30, 2010.  (ECF No. 26-1, Consent Decree).  The consent decree states in pertinent part that "[i]f and when a customer reserves an available room type at a property in the United States through the Reservation System, a room of that room type will be placed in reserve for that customer and will be taken out of the available inventory for that hotel.  The room may be released back into available inventory if the reservation is cancelled or the customer fails to check in by the specified check-in deadline time."  (ECF No. 26-1, Consent Decree at ¶ 25(f)).

Defendant Hilton submits the sworn affidavit of Maxime Verstraete which states in part that:

> In the year prior to March 15, 2012, Hilton undertook very significant steps to ensure that its reservations system complied with new ADA requirements.  These steps were also required by the Consent Decree entered by the United States District Court for the District of Columbia in *United States v. Hilton Worldwide*, 10-cv-01924 (D.D.C.)...
>
> Hilton's policy of guaranteeing accessible room reservations has been in its brand standards since February 2012.
>
> To further make clear that accessible room reservations are guaranteed, Hilton has added language to the reservation confirmation notice that is sent to guests to explicitly state that accessible room reservations are guaranteed.  The additional language is scheduled to appear on confirmations starting on September 17, 2014 and it will state: "Your reserved accessible room type is guaranteed, subject to circumstances outside the hotel's control."

(ECF No. 26-3, Declaration of Maxime Verstraete at ¶¶ 6-9).

In this case, resolution of the jurisdictional issue of mootness involves substantive issues of Plaintiff's ADA claim.  However, the Court finds that Defendant Hilton has not carried the "heavy burden of establishing that there is no effective relief remaining for a court to provide."  *Strong,* 489 F.3d at 1059.

Defendant Hilton submits evidence that Hilton adopted a policy of guaranteeing reservations for accessible guest rooms to comply with the requirements of the Consent Decree between Hilton and the U.S. Department of Justice entered by the U.S. District Court for the District of Columbia on November 30, 2010; that Hilton made significant changes to its reservation system and provided training to its employees on the new policies since November 2011; and that Hilton has guaranteed accessible guest rooms since February 15, 2012. (ECF No. 26-1 at 2). Plaintiff initiated this suit on March 6, 2014, alleging that his confirmation email on July 9, 2013 did not guarantee that the specific accessible room reserved through the reservation service is held for the reserving customer and that he was not provided a room when he went to the Embassy Suites Bloomington on July 21, 2013. (ECF No. 1 ¶¶ 12, 14). Defendant Hilton submits evidence that it has added language to the reservation confirmation notice that is sent to guests to explicitly state that accessible room reservation are guaranteed and the additional language is scheduled to appear on confirmation starting September 17, 2014. *Id*. at 5-6. Under the facts presented, the Court finds Defendants have not carried the heavy burden of showing that the changes made by Hilton have made it absolutely clear that the allegedly wrongful behavior cannot reasonably by expected to recur. *See Norman-Bloodsaw*, 135 F.3d at 1274. The conduct alleged in Plaintiff's second amended complaint occurred after Hilton states that it "made significant changes to its reservation system," "provided training to its employees on the new policies," and "guaranteed reservations for accessible guest rooms." (ECF No. 26-1 at 2). Defendants' motion to dismiss Plaintiff's ADA claim against Defendant Hilton on grounds of jurisdictional mootness is denied.

## II. Article III Standing

Defendants contend that Plaintiff lacks standing as to his ADA claim because he is under no threat of imminent injury. (ECF No. 26-1 at 9).

"Federal courts are courts of limited jurisdiction." *Kokkonen,* 511 U.S. at 377. Anyone seeking "to invoke the jurisdiction of the federal courts must satisfy the

threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires the plaintiff show: (1) they "suffered an 'injury in fact'", (2) the injury was "'fairly ... trace[able] to the challenged action of the defendant'", and (3) it "must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.* at 560 (citations omitted). When seeking injunctive or declaratory relief, a plaintiff must also establish a "sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 102.

To establish standing in the ADA context, a plaintiff must allege that a public accommodation has discriminated against him and that there is a "real or immediate threat that the [public accommodation] will again subject [him] to discrimination." *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1019 (9th Cir. 2002). This can be done by showing (1) the plaintiff has encountered barriers at a place of public accommodation and (2) the plaintiff intends to return to the public accommodation in the future. *Pickern v. Holiday Quality foods, Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002)); *see also Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938, 946 (C.D. Cal. March 14, 2005) ("This can be done by a plaintiff showing he has encountered (or has knowledge of) barriers at a place of public accommodation and he intends to return to the public accommodation in the future"); *Harris v. Del Taco, Inc*., 396 F.Supp.2d 1107, 1113 (C.D. Cal. 2005) ("[A]n ADA plaintiff can demonstrate actual or imminent injury by establishing that he or she intends to return to the public accommodation if it is made

accessible."). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Lujan*, 504 U.S. at 561.

The Court finds that Plaintiff has sufficiently alleged facts to show that there is a real or immediate threat that Hilton will again subject him to the discrimination because he is a Hilton Honors member who stays at Hilton and Embassy Suites on a regular and ongoing basis during his travels to Minnesota. Defendants' motion to dismiss Plaintiff's ADA claim against Defendant Hilton for lack of standing is denied.

## III.   Supplemental Jurisdiction

Defendants contend that once a federal court has dismissed a plaintiff's federal law claims, it has discretion to dismiss the plaintiff's state law claims. Plaintiff contends that this Court has original federal question jurisdiction over the federal ADA claim brought and, therefore, has supplemental or pendent party jurisdiction over Defendants.

A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir.2004). The Unruh Act and the Disabled Persons Act are alternative means under California law to enforce the architectural regulations or design standards implemented by the ADA. *See* Cal. Civ. Code § § 51(f) (Unruh Act) & 54(c)(DPA); *Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1223-24 (S.D. Cal. 2007).

The Court finds that Plaintiff's state law claims against Defendant Hilton are so related to the ADA claim that they form part of the same case or controversy, and that the Court may properly exercise supplemental jurisdiction under section 1367(a). The Court declines to exercise supplemental jurisdiction over Defendants Felcor and ESM because the Court has dismissed Plaintiff's federal ADA claim as to those Defendants.

Case 3:14-cv-00504-WQH-NLS Document 33 Filed 02/11/15 PageID.321 Page 10 of 10

# CONCLUSION

**IT IS ORDERED** Defendants' Motion to Dismiss (ECF No. 26) is GRANTED as to Defendants Felcor and ESM and DENIED as to Defendant Hilton.

DATED: February 11, 2015

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

- 10 -

14cv0504 WQH (NLS)